UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER MCNAUGHTON, a Pennsylvania citizen, | CIVIL ACTION |
| Plaintiff, | Case No.: |
| vs. | **JURY TRIAL DEMANDED** |
| UNITEDHEALTHCARE INSURANCE COMPANY, a Connecticut corporation, UNITED HEALTHCARE, INC., a Delaware corporation, | |
| Defendants. | |

### COMPLAINT

NOW comes Plaintiff, Christopher McNaughton, by and through his undersigned counsel, Munley Law, PC and the Law Offices of Scott Glovsky, APC and avers as follows:

## I.   THE PARTIES

1.    Plaintiff Christopher McNaughton is a competent adult individual and a citizen of Pennsylvania with an address at 229 Woodland Drive, State College, PA 16803.

2.    Defendant UnitedHealthcare Insurance Company, upon information and belief is, and at all relevant times was, a corporation duly organized and

existing under and by virtue of the laws of the State of Connecticut with its principal place of business at 9900 Bren Road, East Minnetonka, MN 55343.

3.     Defendant UnitedHealthcare, Inc. is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Delaware with its principal place of business at 9900 Bren Road, East Minnetonka, MN 55343.

4.     United Healthcare Insurance Company and United Healthcare, Inc. are collectively referred to hereafter as "United".

5.     United are insurance companies licensed and authorized to do business within the Commonwealth of Pennsylvania, and did in fact conduct business, including selling policies, adjusting claims and accepting premiums, and conducting insurance activities in the Commonwealth.

6.     It is believed and averred that United supervised, directed and controlled the activities with respect to the handling of Plaintiff's health insurance claim and formulated guidelines and policies for handling, adjusting, negotiating, and paying claims.

7.     At all times material hereto, United acted, by and through its agents, ostensible agents, servants and employees, acting in the course and scope of their agency and/or employment for whose conduct United is liable vicariously or otherwise.

## II.   <u>JURISDICTION AND VENUE</u>

8.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is diverse.

9.     The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III.   <u>FACTUAL ALLEGATIONS</u>

11.     Plaintiff Christopher McNaughton was diagnosed with severe ulcerative colitis in January 2014 at the age of twenty-two.

12.     Ulcerative colitis is a chronic disease that causes inflammation and ulcers in the digestive tract. There is no known cure and ongoing treatment is required to prevent serious health consequences.

13.     This disease causes McNaughton to have bloody diarrhea up to twenty times a day; severe abdominal pain; severe anemia causing constant fatigue; no appetite; significant weight loss and malnutrition; severe inflammatory arthritis which leaves him unable to walk and requires hospitalization; severe, recurrent, life-threatening, deep vein thrombosis resulting in repeated hospitalizations; repeated fractures and osteopenia; and severe secondary adrenal insufficiency.

3

14.     This disease is horrible, and as a result, McNaughton sought out the best care possible.

15.     After seeing many doctors, McNaughton began treating with Dr. Edward Loftus, in May 2014, at the Mayo Clinic in Rochester, Minnesota due to the severity of McNaughton's ulcerative colitis. Dr. Loftus is one of the top gastroenterologists in the country.

16.     Over a span of five years after his diagnosis, McNaughton with the assistance and guidance of his physicians has tried numerous treatment regiments in an attempt to treat his condition.

17.     In October 2018, after failing all other treatment options and doses, Dr. Loftus prescribed Remicade 20 mg/kg every 4 weeks and Entyvio 600 mg every 4 weeks to McNaughton (the "treatment").

18.     The treatment, which McNaughton received via intravenous infusions, was critical to his health and wellbeing.

19.     As a result of this treatment in the dosages prescribed by Dr. Loftus, McNaughton was finally able to gain relief from his illness.

20.     These medications in these exact doses are medically necessary to control McNaughton's disease.

21.     When taking these dosages McNaughton finally got his disease under control. Lesser dosages were not effective in treating McNaughton, but with the

dosages prescribed by Dr. Loftus, his dream of a normal life without pain and suffering was finally realized.

## IV.  <u>THE POLICY</u>

22.    United issued a school-sponsored health insurance plan, referred to as Blanket Student Accident and Sickness Insurance Plan to the Pennsylvania State University, Policy No. COL-17-PA (PY21) CERT. *See* Certificate of Coverage attached hereto as Exhibit A.

23.    The master policy is currently in the possession of United and is unavailable to Plaintiff.

24.    Under this plan, United agreed to pay "for Covered Medical Expenses . . . less any deductible incurred by or for an insured Person for loss due to injury or sickness subject to: a) the maximum amount for specific services as set forth in the Schedule of Benefits; and b) any Coinsurance or Copayment amounts set forth in the schedule of Benefits or any benefit provision hereto."  *See* Exhibit A.

25.    Under the plan, Covered Medical Expenses include infusion therapy and prescription drugs. *Id*.

26.    The plan defines "Covered Medical Expenses" as "reasonable charges which are: 1) not in excess of Usual and Customary Charges; 2) not in excess of the Preferred Allowance when the policy includes Preferred Provider benefits and the charges are received from a Preferred Provider; 3) not in excess of the

5

maximum benefit amount payable per service as specified in the schedule of benefits; 4) made for services and supplies not excluded under the policy; 5) made for services and supplies which are a medical necessity; 6) made for services included in the Schedule of Benefits and 7) in excess of the amount stated as a deductible, if any." *See* Exhibit A, at p. 21, sec. 11.

27.    Medical necessity and medically necessary are defined in the policy as follows: "those services or supplies provided or prescribed by a Hospital or Physician which are all of the following: 1) Essential for the symptoms and diagnosis or treatment of the Sickness or Injury; 2) Provided for the diagnosis, or the direct care and treatment of the Sickness or Injury; 3) In accordance with the standards of good medical practice; 4) Not primarily for the convenience of the Insured, or the Insured's Physician; 5) The most appropriate supply or level of service which can safely be provided to the Insured." *See* Exhibit A, at p. 23, sec. 11.

28.    At all times pertinent hereto, McNaughton was an insured person under the policy.

29.    McNaughton is a student at the Pennsylvania State University and is eligible to and did in fact enroll in the school-sponsored health insurance plan issued by United.

30.     McNaughton first enrolled in the school-sponsored health insurance plan on July 1, 2020, and then re-enrolled for the 2020-2021 plan year.

31.     McNaughton re-enrolled in the school-sponsored health insurance plan for the 2021-2022 school year.

32.     McNaughton pays monthly premiums in exchange for United's promise to cover medically necessary treatments which include the treatment prescribed by Dr. Loftus.

33.     Notwithstanding United's legal and contractual obligations, United has unreasonably refused to provide benefits for Plaintiff's medically necessary infusion medications in the dosages prescribed by Dr. Loftus.

## V.    UNITED'S  HANDLING OF PLAINTIFF'S COVERED MEDICAL EXPENSES

34.     The treatment prescribed by Dr. Loftus was covered by McNaughton's former health plan, Aetna, before McNaughton joined United's health plan.

35.     Before McNaughton enrolled in the United plan, United represented to him that his treatment would not require a prior authorization.  All that would be required for coverage under the policy, according to United's representations, was a referral from the Penn State University Health Services.

36.     In light of these representations and given that McNaughton had the necessary referral, he enrolled in the United Plan under the belief that his treatment

7

would be covered.

37.    Initially, United covered the medically necessary treatment in July 2020 and August 2020.

38.    However, in September 2020 United suddenly, unreasonably, and without notice, stopped paying for the infusions.

39.    United never informed McNaughton in advance that it would no longer pay for the treatment he was receiving, therefore he was not aware that the bills were not being paid.

40.    Since United did not inform McNaughton that it failed to pay for his covered medical expenses, he continued to receive the treatment.

41.    McNaughton eventually learned that the bills were not being paid. At this point, he had over $1 million in unpaid treatment bills.

42.    Over the next 6 months, McNaughton repeatedly attempted to determine why United had stopped paying for his medically necessary treatments.

43.    Finally, on February 1, 2021, a United customer service representative informed the Plaintiff's mother that United had flagged McNaughton's account as a "high dollar amount".

44.    As such, United unilaterally and without notice to its insured, stopped paying for Covered Medical Expenses due to its cost and not because the treatment was not covered under the policy. These actions clearly show that United was

8

placing its own interest over its insured.

45.     McNaughton proactively contacted the Penn State administration to voice his concern and frustration about United's conduct.

46.     On March 5, 2021, McNaughton received an email from the Penn State administration indicating it had spoken with United, and United had agreed to pay for his past infusion bills as well as cover them through August 12, 2021, the end of the 2020-2021 policy term.

47.     On March 29, 2021, McNaughton learned, that prior to the 2021-2022 school year, United would require him to undergo a prior authorization of benefits, and that this particular prior authorization was a "special exception" it created specifically for only McNaughton.

48.     The special exception was not part of the plan and was only created by United so that it could avoid paying for the Covered Medical Expenses during the upcoming 2021-2022 school year plan.

49.     United's conduct was nothing more than a pretextual ruse designed to find a way to avoid payment of Covered Medical Expenses that was due and owed under the plan and to justify United's predetermined position that it would not pay for the expenses due to its high cost.

50.     McNaughton complained to United that it was creating new criteria that was not part of the plan in order to deny his treatment.

51.     On May 12, 2021, McNaughton learned that United was conducting a peer-to-peer review with Dr. Loftus.

52.     On May 14, 2021, McNaughton received an email indicating that United would not cover the infusions.  *See* Email attached hereto as Exhibit B.

53.     The email said that the reason for the denial was that in the peer-to-peer review Dr. Loftus agreed that the current treatment was "not appropriate" and that it was "appropriate" for him to receive a treatment protocol suggested by United that would cost significantly less. *Id.* They also stated that Dr. Loftus had agreed to reduce the doses of the medications. *Id.*

54.     United's representation of the statements allegedly made by Dr. Loftus proved to be false and an attempt in bad faith to avoid paying for the covered treatment prescribed by Dr. Loftus.

55.     On May 19, 2021, Dr. Loftus wrote a letter stating that McNaughton required the treatments that he prescribed, and that failure to provide these treatments could have "serious detrimental effects on both his short term and long term health and could potentially involve life threatening complications. This would ultimately incur far greater medical costs. Chris was on the doses suggested by United Healthcare before, and they were not at all effective." *See* May 19, 2021 letter attached hereto as Exhibit C.

56.     On May 20, 2021, McNaughton met with the Penn State administration and informed them of the misrepresentations made by United.

57.     Penn State informed Plaintiff that it scheduled a meeting with the CEO of United Healthcare Student Resources to address United's conduct in handling Plaintiff's covered medical expenses.

58.     On June 4, 2021, after being confronted with the fraudulent statements in the May 14, 2021 denial, United issued a new denial letter to McNaughton advising him that it would not cover his treatments. *See* June 4, 2021 denial letter attached hereto as Exhibit D.

59.     In the June 4, 2021 letter, United indicated that McNaughton had "exhausted the internal appeal process." *Id.*

60.     At no point prior to issuing the determination made during the internal review process, did United provide McNaughton with the name or other contact information of the employee or department designated to coordinate the Internal Review in direct violation of the terms of the contract. *See* Exhibit A, at p. 28.

61.     Likewise, United failed to provide McNaughton notice that he was entitled to submit written comments, documents, records, and other material relating to the request for benefits to be considered when conducting the Internal Review in direct violation of the terms of the contract. *See* Exhibit A, at p. 28.

62.     Additionally, prior to issuing its final determination, United failed to provide McNaughton any new or additional evidence considered by United in connection with the grievance and any new or additional rationale upon which the decision was based in direct violation of the terms of the contract. *See* Exhibit A, at p. 28.

63.     United also failed to provide McNaughton with an opportunity to respond to any new or additional evidence or rationale in direct violation of the terms of the contract. *See* Exhibit A, at p. 28.

64.     In that letter, United denied McNaughton's medical expenses claiming that the prescribed dosages for the two drugs are not established when using a dual biologic therapy and that the reviewers were concerned with the safety of the prescribed dosage and frequency. *Id.*

65.     United's claims were baseless, fraudulent, and outrageous. The claims were directly inconsistent with all the information provided by Dr. Loftus regarding the reason for the prescribed treatment and the excellent medical response by the Plaintiff to that treatment.

66.     United was not at all concerned about the safety of its insured as United claimed. Rather United was only concerned about its own financial interests thereby putting Plaintiff's health in extreme jeopardy.

67.     The June 4, 2021 letter also advised McNaughton that United would not cover his treatments at the dosage prescribed by Dr. Loftus because it did not meet United's requirements for medical necessity.

68.     These statements were directly inconsistent with what Dr. Loftus informed United about McNaughton's prescribed treatment.

69.     On June 7, 2021, Dr. Loftus wrote another letter explaining that he never said the things attributed to him in Dave Opperman's fraudulent email on May 14, 2021. *See* June 7, 2021 letter attached hereto as Exhibit E.

70.     United ignored and failed to respond to Dr. Loftus' correspondence.

71.     Any fair and objective analysis of Plaintiff's treatment would clearly indicate that the treatment prescribed by Dr. Loftus was a Covered Medical Expense and payable under the policy. United does not have a reasonable basis for claiming that Plaintiff's treatment is not covered under the plan and knew or recklessly disregarded its lack of reasonable basis.

72.     United has a fiduciary obligation to cover Plaintiff's Covered Medical Expenses and a duty of good faith and fair dealing toward Plaintiff.

73.     United has a duty to conduct a prompt, thorough and timely investigation of whether Plaintiff's treatment is a Covered Medical Expense under the plan.

74.     Despite information to the contrary, United has proceeded to deny coverage to Plaintiff for Covered Medical Expenses which required the Plaintiff to incur substantial legal fees and expenses to obtain payment for his treatment.

75.     United also owes a duty to find information that supports coverage rather than looking for ways to deny coverage as it did in this case.

76.     In violation of the plan and the laws of the Commonwealth of Pennsylvania, United, without legal justification, required Plaintiff to incur substantial legal and related expenses that were completely unnecessary for the unlawful egregious conduct of United.  The conduct of United includes, but is not limited to the following:

    a.  Misrepresenting coverage for covered medical expenses under the plan;

    b.  Withholding information and/or documents pertaining to coverage under the plan;

    c.  Asserting frivolous reasons for denying coverage under the plan;

    d.  Misleading Plaintiff as to what is a Covered Medical Expense under the plan;

    e.  Misleading Plaintiff as to the policy information;

    f.  Denying payment of Covered Medical Expenses;

g.  Forcing Plaintiff to file a Complaint to obtain payment for Covered Medical Expenses;

h.  Engaging in actions designed to delay or deny the ultimate payment of Covered Medical Expenses;

i.  Misinterpreting its own policy;

j.  Knowing and/or recklessly disregarding the lack of a reasonable basis in denying the payment of Covered Medical Expenses;

k.  Unreasonably making treatment decisions based on financial concerns;

l.  Using utilization guidelines that are unreasonably stringent and stop members from receiving medically necessary care;

m. Failing to provide notice to Plaintiff that it was not paying Covered Medical Expenses during the 2020-2021 plan;

n.  Failing to give equal consideration to providing coverage to Plaintiff under the plan;

o.  Misrepresenting statements made by Plaintiff's treating physician, Dr. Loftus;

p.  Assuming a fiduciary obligation and failing to carry out the same in good faith;

q.  Ignoring medical information from Dr. Loftus who is recognized as one of the top gastroenterologists in the country;

r.  Forcing Plaintiff to retain counsel and the expenses associated therewith to secure coverage for Covered Medical Expenses under the plan;

s.  Failing to fully disclose and/or misrepresenting the coverage available to Plaintiff under the plan;

t.  Misrepresenting the benefits, conditions and terms of the applicable insurance policy and limits and/or pertinent facts or policy or contract provisions relating to coverage of Covered Medical Expenses at issue in violation of 40 P.S. § 1171.5;

u.  Refusing to pay claims without conducting a reasonable investigation based upon all information available in violation of 40 P.S. § 1171.5;

v.  Compelling Plaintiff to institute litigation and recover amounts due under the insurance policy in violation of 40 P.S. § 1171.5;

w. Misrepresenting the benefits, conditions and terms of the applicable insurance policy and limits and/or pertinent facts or policy or contract provisions relating to coverages at issue in violation of 40 P.S. § 1171.5;

x.  Failing to affirm or deny coverage of claims within a reasonable time after the claim was submitted by Plaintiff and communicated to the company or its representative in violation of 40 P.S. § 1171.5;

y.  Failing to advise Plaintiff of the acceptance or denial of a claim pursuant to 31 Pa. Code 146.7;

z.  Failing to advise Plaintiff of the investigation of coverage and/or possibility of a coverage issue at a time when the issue was being "investigated" by United in violation of 31 Pa. Code 146.7;

aa. Unnecessarily requiring the insured to incur the time and expense associated with pursuing his claim for payment of Covered Medical Expenses when United knew or should have known it had no good faith basis to deny coverage or payment of Plaintiff's treatment;

bb. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services in violation of 73 P.S. 201-2 et seq.;

cc. Representing that goods or services have sponsorship, approval, characteristics, benefits or quantities that they do not have or that a person has sponsorship, approval, status, affiliation or connection that he does not have in violation of 73 P.S. 201-2 et seq.;

dd. Advertising goods or services with the intent not to sell them as advertised in violation of 73 P.S. 201-2 et seq.;

ee. Failing to comply with the terms of a written guarantee or warranty given to a buyer, at, prior to or after a contract for the purpose of goods or services in violation of 73 P.S. 201-2 et seq.;

ff. Breaching its fiduciary duty of good faith and fair dealing;

gg. Placing its interest over the interest of the insured;

hh. Failing to honestly, fairly, intelligently and objectively evaluate whether Plaintiff's treatment was a Covered Medical Expense under the plan;

ii. Engaging in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding in violation of 73 P.S. 201-2 et seq.;

jj. Denying coverage for Covered Medical Expenses because of its cost and thereby placing Plaintiff's health in extreme jeopardy.

77. The conduct of United evidences reckless disregard and indifference to the rights of its insured, the Plaintiff herein.

78. United's denial was done with conscious disregard for the life and safety of McNaughton. United's denial of medically necessary treatment to McNaughton breached the terms of the plan contract and was in bad faith.

79.     As a result of the denial, McNaughton has suffered, and continues to suffer, damages, including, but not limited to, economic damages, non-economic damages, and attorneys' fees.

80.     As a result of the conduct described above, Plaintiff has unnecessarily incurred legal fees and costs together with related economic loss, physical injury, physical discomfort, emotional distress and humiliation, associated with United's failure to honor its health insurance coverage available to Plaintiff and delay in processing the payment of Plaintiff's claims.

81.     As a proximate result of the aforementioned unreasonable and bad faith conduct of United, Plaintiff has suffered, and will continue to suffer in the future, damages under the plan contract, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

82.     As a further proximate result of the aforementioned wrongful conduct of United as alleged in this cause of action, Plaintiff has suffered anxiety, worry, and mental and emotional distress, all to Plaintiff's general damage in a sum to be determined at the time of trial.

83.     As a further proximate result of the unreasonable and bad faith conduct of United as alleged in this cause of action, Plaintiff was compelled to retain legal counsel and expend costs in an effort to obtain the benefits due under the plan contract.

19

84.     United's conduct described herein was intended by United to cause injury to Plaintiff or was despicable conduct carried on by United with a willful and conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to United with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of United.

85.     At all relevant times, United's actions were willful, wanton, reckless and intentional and were based upon and motivated by its pursuit of monetary gain without regard for the resulting damage and injury and deprivation of insurance benefits due and owing its insured.

## **COUNT ONE**

Christopher McNaughton v. UnitedHealthcare Insurance Company and
UnitedHealthcare, Inc.

Breach of contract

86.     Plaintiff incorporates by reference each and every of the foregoing paragraphs as though set forth in full in this cause of action.

87.     The conduct described in this Complaint by United constitutes a breach of the contract of insurance with Plaintiff in failing to honor Plaintiff's

claim for benefits under the policy and denying coverage under the policy in violation of Pennsylvania statutes and applicable case law.

88.    The foregoing conduct of United also constitutes a breach of the Policy's implied covenant of good faith and fair dealing.

89.    Plaintiff has satisfied all of his obligations under the policy, including but not limited to all conditions precedent and all conditions subsequent.

90.    As a consequence of United's breach of contract, United is liable to Plaintiff for actual and consequential damages.

WHEREFORE, Plaintiff Christopher McNaughton demands judgement in his favor and against Defendants UnitedHealthcare Insurance Company and UnitedHealthcare, Inc. in an amount in excess of $75,000.00 plus attorney's fees, interest and costs and such other and further relief as the Court deems just and proper.

## **<u>COUNT TWO</u>**

Christopher McNaughton v. UnitedHealthcare Insurance Company and UnitedHealthcare, Inc.

<u>Bad faith 42 Pa.C.S. § 8371</u>

91.    Plaintiff incorporates by reference each and every of the foregoing paragraphs as though set forth in full in this cause of action.

92.    42 Pa.C.S.A. § 8371, provides a private cause of action for bad faith against an insurance company as follows:

21

"In an action arising under an insurance policy, if the Court finds that an insurer has acted in bad faith toward the insured, the Court may take all of the following actions:

> (1) Award interest on the amount of the claims when the basic claim was made by the insured in an amount equal to the prime rate of interest plus 3%;
>
> (2) Award punitive damages against an insurer;
>
> (3) Assess Court costs and attorney's fees against the insurer."

93.     United has engaged in a pattern of conduct against its insured, the Plaintiff in this case as set forth above.

94.     By virtue of its conduct, outlined at length above and incorporated herein by reference, United knew or should have known it lacked a reasonable basis to deny coverage of the health insurance claim made by Plaintiff for medically necessary treatments and prescriptions and recklessly disregarded its lack of reasonable basis by a course of conduct that denied or delayed Plaintiff's entitlement to benefits.

95.     The action and conduct of United constitutes bad faith in violation of 42 Pa. C.S.A. § 8371.

96.     Pursuant to 42 Pa. C.S.A. § 8371, Plaintiff is entitled to the following damages as a result of United's bad faith conduct: Interest on the claims for the date the claims were made in an amount equal to the prime rate of interest plus 3%,

costs and attorney's fees for this action, punitive damages, and such other compensatory and/or consequential damages allowed by law.

WHEREFORE, Plaintiff Christopher McNaughton demands judgement in his favor and against Defendants UnitedHealthcare Insurance Company and UnitedHealthcare, Inc. in an amount in excess of $75,000.00 plus attorney's fees, interest and costs and such other and further relief as the Court deems just and proper.

## **COUNT THREE**

Christopher McNaughton v. UnitedHealthcare Insurance Company and
UnitedHealthcare, Inc.

Unfair Trade Practices and Consumer Protection Law

97.     Plaintiff incorporates by reference each paragraph of the above allegations as though set forth in full in this cause of action.

98.     For the reasons set forth above, United has committed unfair, deceptive practices prohibited by the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq for which United is liable for treble damages, plus attorney's fees and costs incurred by Plaintiff.

99.     The deceptive and unfair practices committed by United heretofore described are defined as an unfair method of competition and/or unfair or deceptive act or practiced under 73 P.S. § 201 including:

a.  Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services;

b.  Representing that goods or services have uses or benefits that they do not have;

c.  Advertising goods or services with intent not to sell them as advertised;

d.  Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

e.  Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

WHEREFORE, Plaintiff Christopher McNaughton demands judgement in his favor and against Defendants UnitedHealthcare Insurance Company and UnitedHealthcare, Inc. in an amount in excess of $75,000.00 plus attorney's fees, interest and costs and such other and further relief as the Court deems just and proper.

## **COUNT FOUR**

Christopher McNaughton v. UnitedHealthcare Insurance Company and UnitedHealthcare, Inc.

Negligent Misrepresentation

100.   Plaintiff incorporates by reference each paragraph of the above allegations as though set forth in full in this cause of action.

101.   United owed Plaintiff a duty of care in taking reasonable steps to ensure the truth of their representations to consumers, including Plaintiff.

102.   United operating through its agents, servants, workmen, and/or employees, authorized and acting within the scope of its employment, breached its duty of care in making the misrepresentation previously stated herein.

103.   Plaintiff reasonably relied on such misrepresentations to his detriment.

104.   As a direct and proximate result of the aforesaid conduct of United, Plaintiff has sustained damages as have been previously stated herein.

WHEREFORE, Plaintiff Christopher McNaughton demands judgement in his favor and against Defendants UnitedHealthcare Insurance Company and UnitedHealthcare, Inc. in an amount in excess of $75,000.00 plus attorney's fees, interest and costs and such other and further relief as the Court deems just and proper.

## COUNT FIVE

Christopher McNaughton v. UnitedHealthcare Insurance Company and
UnitedHealthcare, Inc.

### Injunction

105.   Plaintiff incorporates by reference each paragraph of the above allegations as though set forth in full in this cause of action.

25

106.    Plaintiff is insured under the United plan. A present and actual controversy between Plaintiff and United exists in that United's refusal to provide Plaintiff with coverage for the medication in the dosages prescribed by Dr. Loftus denies his access to that medication.

107.    If Plaintiff does not receive the medication on time as prescribed by Dr. Loftus, it will have serious detrimental effects in both his short-term and long-term health and potentially could cause life-threatening consequences to Plaintiff.

108.    Plaintiff requests a declaration and injunction from this Court that United has an obligation to pay for Remicade 20 mg/kg every 4 weeks and Entyvio 600 mg every 4 weeks for the remainder of the policy term in which United insures Plaintiff.

109.    There is a substantial likelihood that Plaintiff will prevail on the merits of his case.

110.    There is a substantial threat that Plaintiff will suffer irreparable injury if the injunction is not granted.

111.    Plaintiff's threatened injury outweighs the threatened harm to United.

112.    Plaintiff's injunction will not disserve the public interest.

113.    Plaintiff requests this Court to enjoin United and order it to continue to pay for the medication in the dosages prescribed by Dr. Loftus for the full policy period.

WHEREFORE, Plaintiff Christopher McNaughton demands judgement in his favor and against Defendants UnitedHealthcare Insurance Company for an injunction and order requiring Defendants to pay for the medication plus attorney's fees, interest and costs and such other and further relief as the Court deems just and proper.

**MUNLEY LAW, PC**

By:  /s/ Marion K. Munley
          Marion K. Munley
          PA ID. No. 46957
          John M. Mulcahey
          PA ID. No. 74562
          Katie Nealon
          PA ID. No. 317965
          Melinda C. Ghilardi
          PA ID No. 40396
          227 Penn Avenue
          Scranton, PA 18503
          (570) 346-7401

**Law Offices of Scott Glovsky, APC**

By:  /s/ Scott Glovsky
          Scott Glovsky
          CA ID. No. 170477
          343 Harvard Avenue
          Claremont, CA 91711
          (626) 243-5598
          Admission to District in Process

27